IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. _____

| | |
|---|---|
| JOHN CHEN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **COMPLAINT** |
| | ) |
| PEEJEEDEE SAILING B.V. and HOLLAND COMPOSITES BV, | ) |
| | ) |
| Defendants. | ) |

Plaintiff John Chen ("Dr. Chen") brings this action against Defendants Peejeedee Sailing B.V. ("PJD") and Holland Composites BV ("Holland"), stating for his Complaint as follows:

## NATURE OF ACTION

1. This is an action for, *inter alia*, PJD's and Holland's wrongful use of design ideas and equipment owned by Dr. Chen in direct violation of PJD and Holland's written agreements with Dr. Chen to design and manufacture high-end sailboats using Dr. Chen's intellectual property. Through this action, Dr. Chen seeks compensatory damages for Defendants' unlawful conduct and an award of attorneys' fees and costs.

## PARTIES

2. Dr. Chen is an individual who resides in New Hampshire and is a citizen of the State of New Hampshire.

3. Upon information and belief, PJD is a private limited liability company organized and existing under the laws of the Netherlands which maintains its principal place of business in

Harderwijk, Netherlands. PJD, upon information and belief, is owned by Pieter-Jan Dwarshuis ("Dwarshuis"), a citizen and resident of the Netherlands.

4. Upon information and belief, Holland is a private limited liability company organized and existing under the laws of the Netherlands which maintains its principal place of business in Lelystad, Netherlands. Holland, upon information and belief, is owned by Dwarshuis and two other individuals who also are citizens and residents of the Netherlands.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(2). This is an action between citizens of a State and citizens of a foreign state. Dr. Chen is a citizen of the State of New Hampshire. Defendants are citizens of the Netherlands. The amount in controversy, exclusive of interest and costs, greatly exceeds the jurisdictional minimum of $75,000.

6. This Court may exercise personal jurisdiction over Defendants consistent with the United States Constitution because, *inter alia*, this action arises from and/or is related to Defendants' activities in North Carolina, including Defendants' execution of the contracts that are the subject of this action in North Carolina; their delivery of items of value in North Carolina pursuant to the terms of the contracts that are the subject of this action; the transfer of assets by Defendants to Dr. Chen through consent orders negotiated in and signed by Defendants in North Carolina; the testimony of one or more representatives of Defendants in North Carolina courts regarding the contracts at issue; and Defendants' breaches of the contracts that are the subject of this action resulting in injury within North Carolina. Moreover, in the contracts that are the subject of this action, Defendants agreed that disputes relating thereto must be resolved in North Carolina.

7. Venue in the U.S. District Court for the Eastern District of North Carolina is proper pursuant to 28 U.S.C. § 1391(b)(2) because, *inter alia*, a substantial part of the events giving rise to the claims asserted herein occurred in this judicial district.

## FACTS

### Gunboat conceives of the G4 and contracts with PJD to jointly design the G4

8. Gunboat International Ltd. ("Gunboat") was a corporation organized and existing under the laws of the State of Rhode Island which maintained a principal place of business in Wanchese, North Carolina. Gunboat was founded by Peter Legrand Johnstone ("Johnstone").

9. Gunboat was in the business of building, manufacturing and selling luxury cruising catamarans, including the Gunboat G4 catamaran (the "G4").

10. The G4 is a forty-foot, high-performance catamaran suitable for racing. The G4 features innovative rudders, daggerboards, hydraulics, foils and other technology which lift the hull out of the water and thereby enhance the boat's performance substantially. The G4 was largely conceived and designed by Gunboat and its owner, Johnstone.

11. On or about September 24, 2013, Gunboat entered into a contract with PJD whereby they agreed to jointly design the G4 for Gunboat to sell and manufacture (the "Design Agreement," attached hereto as **Exhibit A**.). The Design Agreement was signed by Dwarshuis on behalf of PJD.

12. The Design Agreement provides that the design of the G4 "is a collaboration between [PJD] and Gunboat," and that PJD and Gunboat "both possess extensive proprietary information, and agree to always communicate with each other regarding any possible future use of ideas born from" the design of and collaboration on the G4. (Design Agreement.)

3

13. The Design Agreement further provides that "[i]f any ideas are defendable as copyrightable, either [PJD] or Gunboat shall seek written permission prior to using any new ideas from [the design of the G4] on any future projects where both [PJD] and Gunboat are not both involved." (*Id.*)

14. One purpose of the Design Agreement was to ensure that PJD and its owners did not take, use or transfer the Gunboat intellectual property without the express permission of Gunboat. The sole entity allowed to sell and manufacture the G4 was Gunboat.

15. After Gunboat and PJD entered into the Design Agreement, they jointly designed the G4 for Gunboat to sell and manufacture.

**Gunboat licenses Holland to manufacture the G4**

16. On or about October 3, 2013, Gunboat entered into a contract with Holland, granting an exclusive license to Holland to manufacture the G4 for Gunboat using the G4 technical knowledge, boat design, and design information (the "License Agreement," ¶ 3.1, attached hereto as **Exhibit B**.). The License Agreement was signed on behalf of Holland by Dwarshuis as Holland's managing partner.

17. Pursuant to the License Agreement, Gunboat paid substantial compensation to Holland to make the tooling required to manufacture the G4, to be held at Holland's premises in Lelystad, Netherlands. (*Id.* ¶ 4.1.) The tooling includes "all production molds, jigs, implements, parts and equipment for hull, deck, hatches, bulkheads, foils, etc. specifically used in the manufacture" of the G4 (the "G4 tooling"). (*Id.* ¶ 2.7.)

18. Upon information and belief, Holland currently keeps the G4 tooling at its facilities in the Netherlands.

19. Pursuant to the License Agreement, *inter alia*:

4

      a.      Holland cannot use the G4 tooling "to produce boats or parts of boats other than [the G4]." (*Id.* ¶ 6.6.)

      b.      Holland cannot "build other sailboat designs which are a direct competition to the [G4]." Competitive designs include, but are not limited to, "a comparative vessel whose length is within 5 feet of the [G4]." (*Id.* ¶ 7.1.)

      c.      Gunboat has the right, upon two days' notice by email, to visit Holland's business premises and examine and make copies of all books and records related to the G4. (*Id.* ¶ 4.4.)

      d.      Holland must maintain insurance coverage against damage to the G4 tooling, against damage to a G4 in the process of being manufactured, and against claims for product liability in the manufacture of the G4, and Holland must provide Gunboat with certificates of such insurance coverage. (*Id.* ¶¶ 6.2.2, 6.2.3.)

20.      After Gunboat and Holland entered into the License Agreement, Holland began manufacturing the G4 to be sold by Gunboat.

### Gunboat files for bankruptcy and Dr. Chen purchases all assets and assumes all contracts of Gunboat

21.      On or about November 18, 2015, Gunboat filed for bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina. (Order Approving Sale of Property, Free and Clear of Liens, Claims, or Other Interests and Assuming and Assigning Contracts to John Chen (the "Final Sale Order"), ¶ 1, attached hereto as **Exhibit C**.)

22.      Soon thereafter, Dr. Chen negotiated with Gunboat for the sale of assets related to the G4 and assignment of the Design Agreement and the License Agreement.

23.      On or about November 23, 2016, after negotiations that occurred in North Carolina among Dr. Chen, Gunboat, PJD and Holland, the Bankruptcy Court approved Dr. Chen as the

5

purchaser of Gunboat's assets related to the G4 pursuant to a Bill of Sale entered into between Dr. Chen and Gunboat on or about December 2, 2016. (*Id.*; Bill of Sale, attached hereto as **Exhibit D**.) The Bankruptcy Court also ordered that Gunboat assume the Design Agreement and the License Agreement and assign the Design Agreement and the License Agreement to Dr. Chen. (*See* Final Sale Order.)

24. Pursuant to the Bill of Sale between Dr. Chen and Gunboat, Gunboat sold and assigned to Dr. Chen "its right, title and interest in all of its tangible and intangible assets used or held for use that are related to the [G4]," including, *inter alia*:

   a. the G4 tooling;

   b. the Design Agreement and the License Agreement; and

   c. "[a]ll claims or causes of action Gunboat may have arising out of or relating to any breach of any contract . . . including, without limitation, the Design Agreement and License Agreement." (Bill of Sale, **Exhibit D**.)

25. Therefore, pursuant to the Final Sale Order and Bill of Sale, Dr. Chen is the assignee of the Design Agreement and the License Agreement, and he owns all Gunboat property related to the G4, including the G4 tooling.

26. Thereafter, Dr. Chen engaged in a series of negotiations with PJD and Holland regarding a potential future business relationship among the parties that would replace the Design Agreement and the License Agreement, but the parties were unable to reach agreement on the essential terms for a contractual relationship going forward. Holland and PJD's negotiations with Dr. Chen since the bankruptcy, upon information and belief, have not been in good faith but instead were designed to delay Dr. Chen's ability to enforce the underlying agreements.

6

**PJD breaches the Design Agreement and Holland breaches the License Agreement by designing and manufacturing the F4 and the TF10**

27. Upon information and belief, the DNA F4 catamaran (the "F4") is a catamaran designed to be used as a racing yacht.

28. Upon information and belief, the F4 is directly competitive with the G4.

29. Upon information and belief, the F4 has been designed, in whole or in part, by PJD and/or Holland, using information shared by Gunboat with Holland as improvements on the original G4 concept.

30. Upon information and belief, without authorization from Gunboat or Dr. Chen, the F4 was designed by PJD and/or Holland using new ideas, concepts, technology and proprietary designs developed for and incorporated in the G4. Indeed, according to Holland's website, the F4 was designed "taking the G4 as a rough base." (DNA F4 catamaran, Holland Composites, www.hollandcomposites.nl/projecten/projecten/dna-f4-catamaran (copy attached hereto as **Exhibit E**)).

31. Upon information and belief, without authorization from Gunboat or Dr. Chen, the F4 has been manufactured and continues to be manufactured, in whole or in part, by Holland.

32. Upon information and belief, without authorization from Gunboat or Dr. Chen, the F4 has been manufactured and continues to be manufactured, in whole or in part, by Holland using the G4 tooling, including the outer hulls and the wing deck.

33. Upon information and belief, without authorization from Gunboat or Dr. Chen, Holland has manufactured and sold at least one F4.

34. Upon information and belief, without authorization from Gunboat or Dr. Chen, Holland sold the F4 that it manufactured to a third party for $1,800,000.00.

35. Upon information and belief, the TF10 foiling trimaran (the "TF10") is a foiling trimaran designed to be used for racing. Upon information and belief, the TF10 is equipped with fins, dagger-boards, and rudders designed to provide lift.

36. Upon information and belief, the TF10 is directly competitive with the G4.

37. Upon information and belief, without authorization from Gunboat or Dr. Chen, the TF10 was designed by PJD and/or Holland using ideas, concepts, technology and proprietary designs developed for and incorporated in the G4, or new ideas derived from the G4 technology, concepts, ideas and proprietary designs.

38. Upon information and belief, without authorization from Gunboat or Dr. Chen, the TF10 has been manufactured and continues to be manufactured, in whole or in part, by Holland.

39. Upon information and belief, without authorization from Gunboat or Dr. Chen, Holland has manufactured and continues to manufacture the TF10, in whole or in part, using some or all of the G4 tooling.

40. Upon information and belief, without authorization from Gunboat or Dr. Chen, Holland has manufactured and sold five TF10's so far.

**FIRST CAUSE OF ACTION**
**(Breach of Contract - PJD)**

41. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

42. The Design Agreement constitutes a valid and binding contract between PJD and Dr. Chen, as Gunboat's assignee, enforceable in North Carolina under North Carolina law.

43. The design of the G4 developed by PJD and Gunboat pursuant to the Design Agreement, or elements thereof, incorporates new ideas, concepts, technology and designs, the

8

expression of which in the G4's design constitutes subject matter subject to protection under applicable copyright laws.

44. Neither Gunboat nor Dr. Chen has been involved in the design, development, manufacture or sale of the F4 or TF10.

45. PJD has breached numerous contractual obligations under the Design Agreement, including, but not limited to:

    a. prior to designing the F4 and TF10, failing to communicate with Gunboat or Dr. Chen regarding the F4's and TF10's use of new ideas, concepts, technology and designs expressed in the G4 design developed pursuant to the Design Agreement;

    b. failing to obtain written permission from Gunboat or Dr. Chen prior to using in the F4 and TF10 new ideas, concepts, technology and designs expressed in the G4 design developed pursuant to the Design Agreement; and

    c. in other ways as will be determined through the course of discovery and at the trial of this matter.

46. As a direct and proximate result of PJD's breaches of the Design Agreement, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from PJD in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Breach of Contract - Holland)**

47. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

48. The License Agreement constitutes a valid and binding contract between Holland and Dr. Chen, as Gunboat's assignee, enforceable in North Carolina under North Carolina law.

9

Case 2:18-cv-00015-FL Document 1 Filed 04/10/18 Page 9 of 14

49. Holland has breached numerous contractual obligations under the License Agreement, including, but not limited to:

 a. manufacturing, marketing and selling sailboats directly competitive with the G4, including, but not limited to, the F4 and/or the TF10;

 b. manufacturing the F4 and/or the TF10, in whole or in part, using the G4 tooling;

 c. refusing to allow Dr. Chen to examine and make copies of all books and records related to the G4 located at Holland's business premises after requisite notice from Dr. Chen;

 d. failing to provide Dr. Chen with Holland's certificates of insurance required under the License Agreement; and

 e. in other ways as will be determined through the course of discovery and at the trial of this matter.

50. As a direct and proximate result of Holland's breaches of the License Agreement, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from Holland in an amount to be proven at trial.

51. Dr. Chen is also entitled, pursuant to Paragraph 9.4 of the License Agreement, to recover from Holland his attorneys' fees, costs, and expenses incurred in connection with this matter.

### THIRD CAUSE OF ACTION
**(Conversion - Holland)**

52. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

53. Upon information and belief, by manufacturing, in whole or in part, the F4 and TF10, Holland has converted to itself and has wrongfully and intentionally exercised dominion, ownership and control over the G4 tooling and the physical G4 designs and drawings, which are the property of Dr. Chen and licensed to Holland exclusively for use in manufacturing the G4.

54. As a direct and proximate result of Holland's conversion, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from Holland in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Tortious Interference with Contract - PJD)

55. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

56. Upon information and belief, PJD knew of the License Agreement between Holland and Dr. Chen, as Gunboat's assignee.

57. Upon information and belief, PJD intentionally and with no reasonable or legitimate business interest induced the breaches of the License Agreement by Holland as described herein.

58. The actions of PJD constitute a tortious interference with contract under North Carolina law.

59. As a direct and proximate result of PJD's tortious interference with the License Agreement, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from PJD in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### (Unfair and Deceptive Trade Practices - PJD)

60. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

61. As alleged above, PJD has willfully engaged in unfair or deceptive acts in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1.

62. As a direct and proximate result of PJD's unfair or deceptive acts, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from PJD in an amount to be proven at trial.

63. Dr. Chen is also entitled to treble damages, attorneys' fees, and costs for PJD's willful misconduct pursuant to N.C. Gen. Stat. §§ 75-16 & 75-16.1.

## SIXTH CAUSE OF ACTION
### (Tortious Interference with Contract - Holland)

64. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

65. Upon information and belief, Holland knew of the Design Agreement between PJD and Dr. Chen, as Gunboat's assignee.

66. Upon information and belief, Holland intentionally and with no reasonable or legitimate business interest induced the breaches of the Design Agreement by PJD as described herein.

67. The actions of Holland constitute a tortious interference with contract under North Carolina law.

68. As a direct and proximate result of Holland's tortious interference with the Design Agreement, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from Holland in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
**(Unfair and Deceptive Trade Practices - Holland)**

69. Dr. Chen restates as if fully set forth herein each and every allegation set forth above in the preceding paragraphs.

70. As alleged above, Holland has willfully engaged in unfair or deceptive acts in or affecting commerce in violation of N.C. Gen. Stat. § 75-1.1.

71. As a direct and proximate result of Holland's unfair or deceptive acts, Dr. Chen has sustained injury, and Dr. Chen is entitled to recover compensatory damages from Holland in an amount to be proven at trial.

72. Dr. Chen is also entitled to treble damages, attorneys' fees, and costs for Holland's willful misconduct pursuant to N.C. Gen. Stat. §§ 75-16 & 75-16.1.

**WHEREFORE**, Dr. Chen respectfully requests relief as follows:

a. Entry of judgment in his favor and against Defendants on all claims for relief set forth herein;

b. An award of compensatory damages against Defendants in an amount to be proved at trial;

c. An award of Dr. Chen's attorneys' fees, costs, and expenses incurred in connection with this matter against Defendant Holland as permitted by Paragraph 9.4 of the License Agreement;

d. An award of treble damages from each Defendant in an amount to be established at trial as permitted by N.C. Gen. Stat. § 75-16;

  e. An award of Dr. Chen's costs and attorneys' fees from each Defendant as permitted by N.C. Gen. Stat. § 75-16.1; and

  f. Such other and further relief as the Court may deem just and proper.

This is the 10th day of April, 2018.

         /s/ Robert J. Morris
         Robert J. Morris
          North Carolina State Bar No. 15981
         Jackson W. Moore
          North Carolina State Bar No. 29912
         SMITH ANDERSON BLOUNT DORSETT
         MITCHELL & JERNIGAN LLP
         2300 Wells Fargo Capitol Center
         150 Fayetteville Street
         Raleigh, North Carolina 27601
         Telephone: (919) 821-1220
         Facsimile: (919) 821-6800
         E-Mail:  jmorris@smithlaw.com
              jmoore@smithlaw.com

         *Attorneys for John Chen*